UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES A LOVE,

          Petitioner,

v.                                                                    Case No. 22-cv-0048-bhl

RACINE CORRECTIONAL INSTITUTION,

          Respondent.

## ORDER DENYING § 2254 HABEAS PETITION

      Petitioner James Love filed a federal habeas petition without the assistance of counsel on January 13, 2022. (ECF No. 1.) The Court screened his petition and concluded that only two of the four grounds for relief he identified were timely and properly exhausted. (ECF No. 7 at 2.) The Court gave Love the option of seeking a stay of his case while he exhausted all his claims or abandoning the unexhausted claims. (*Id.* at 2–3.) Love chose the latter route and agreed to abandon his unexhausted claims. (ECF No. 12.) The case then took a detour and experienced a series of delays. First, Love failed to file a timely brief in support of his petition. In response to a nudge from the Court, Love reported that the "friend" who had been helping him was gone and asked for appointed counsel, attaching to his request a "Psychiatric Review" form indicating he suffers from affective disorder and mental retardation. (ECF No. 17.) The Court granted Love's request and ordered Federal Defender Services of Wisconsin either to represent him or appoint counsel to do so. (ECF No. 18.) On September 23, 2022, Dennise Moreno filed a notice of appearance on Love's behalf. (ECF No. 19.) The case then proceeded to briefing on the merits with the final brief landing on the docket on May 26, 2023. (ECF No. 37.)

      Love seeks habeas relief on two grounds. First, he contends his trial counsel provided ineffective assistance. (ECF Nos. 1 & 7.) Second, he argues that his plea was not knowing, intelligent, or voluntary. (*Id.*) The record confirms that neither ground warrants federal habeas relief. Accordingly, Love's petition will be denied.

## BACKGROUND

On May 6, 2018, Love was charged in state court with both second-degree and third-degree sexual assault. *State v. Love*, 2018CF002107, Milwaukee Cnty. Cir. Ct., https://wcca.wicourts.gov/caseDetail.html?caseNo=2018CF002107&countyNo=40&index=0&mode=details [hereinafter *State v. Love*]. While in custody awaiting trial, Love hit his head against a cell wall. (Case No. 19-cv-1184, ECF No. 52 ¶¶19–21.) His counsel then requested a competency hearing. *State v. Love*, (docket entry dated Aug. 1, 2018). A court-appointed psychologist completed Love's competency evaluation and reported that Love exhibited "strong signs of malingering." (ECF No. 14-1 at 6.) The day after the psychologist completed the evaluation, Love hit his head again while riding in a transport van. (*See* Case No. 19-cv-1184, ECF No. 52 ¶¶82–88.) Love's counsel then challenged the competency report and asked to have another doctor complete a report. *State v. Love*, (docket entry dated Oct. 25, 2018). The circuit court held a competency hearing and, on January 2, 2019, found Love competent to proceed. *Id.* (docket entry dated Jan. 2, 2019). Rather than proceeding to trial, Love agreed to plead guilty to third-degree sexual assault, with the state agreeing to dismiss the second-degree sexual assault charge, while reserving its right to read that charge in for sentencing purposes. *See id.* (docket entry dated Mar. 5, 2019).

Love appeared for a change of plea hearing on March 5, 2019. The judge conducted a standard plea colloquy, first asking Love if he understood that he was charged with third-degree sexual assault and thus subject to a maximum sentence of ten years in prison. (ECF No. 14-5 at 2–3.) Love answered affirmatively. (*Id.* at 3.) Love also answered affirmatively when the court asked him whether he understood that the court would make a finding of guilt and that he would have to register as a sex offender. (*Id.*) The judge specifically confirmed that Love understood that he was waiving a number of his constitutional rights by pleading guilty, including his right to a trial by jury, any defense he may have to the offense charged, his right to challenge the sufficiency of the complaint, and the constitutionality of police actions. (*Id.* at 4–5.) Love again answered affirmatively on each point. (*Id.*) He also agreed that nobody had made any promises or threats for his plea, and that he understood the court was not bound by plea bargain negotiations. (*Id.* at 5.)

With respect to his mental state, Love acknowledged that he was taking medication for mental illness. (*Id.* at 3.) The court then inquired further into Love's understanding of the change of plea proceedings:

> THE COURT: Is there anything that would impair your ability to understand what we're doing here now? Do you understand everything?
> [LOVE]: Yes.
> [DEFENSE COUNSEL]: Judge, the medication basically is for depression and to help him just basically deal with this situation. The Court may recall . . . Mr. Love had had some history of traumatic brain injury. Then had some further incidents in the jail. And we did address those issues with competency. He does not still have recall of any of the events that are described in the complaint. I've explained to him what the discovery and our investigation showed. So if the Court notices there's some hesitation, that's why.

(*Id.* at 3–4.)

The colloquy continued with the court asking defense counsel to confirm she was satisfied that Love's plea was intelligently, knowingly, and voluntarily waiving his constitutional rights. (*Id.* at 5.) Defense counsel answered affirmatively but noted that this was a "difficult situation" and that Love, like the victim, had a "mental condition," so he was concerned about coming to court and saying something "not truthful." (*Id.* at 5–6.) Love supported his counsel's assertions, answering affirmatively when asked if he understood that the state would be able to prove the charges against him, counsel's statement and confirming that his plea was no contest. (*See id.* at 6.)

Following the colloquy, the court accepted Love's change of plea and found him guilty of third-degree sexual assault. (*Id.*) Three months later, on June 27, 2019, the court sentenced Love to ten years imprisonment. *State v. Love*, (docket entry dated June 27, 2019).

On the same day he was sentenced, Love filed a notice of intent to seek postconviction relief. *Id.* His appointed attorney responded by filing a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967), indicating that Love had no arguable basis to challenge either the validity of his plea or his sentence. (ECF No. 14-1 at 9–17.)

Love filed two *pro se* responses to the no-merit report. (ECF No. 14-2 at 1–25, 26–29.) Love's initial response, filed on June 24, 2020, is hard to follow and consists primarily of annotations to his lawyer's no-merit brief. (*See id.* at 1–25.) Next to counsel's description of his statements at the plea hearing, Love complained that he did not understand why his lawyer

"sound[ed] like the DA in this matter." (*Id.* at 9.) Love also noted that he was not only on medication for depression. (*Id.*) Love commented that "everybody no I was on all them pill" and reminded the court that he suffered from a traumatic brain injury (TBI). (*Id.*) Next to the paragraph discussing Love's no-contest plea, Love wrote that "not one person [realized] that Mr Love was injured and the courts did not care" and that he "was not like that when his lawyer first met him." (*Id.* at 10.) He also seemingly maintained his innocence, stating that he and the victim were individuals in a consensual relationship and the victim's guardian had a reason to lie. (*Id.* at 9–11.) Love's second response, filed on July 20, 2020, again emphasized his innocence and his head injury: "Lawyer Mr Love never stand to be have tol[d] the lawyer that he didn't rem[emb]er nothing Mr Love stated he cant [remember] clearly d[ue] to T-B-I." (*Id.* at 29.)

The Wisconsin Court of Appeals summarily affirmed the no-merit report on July 7, 2021. (ECF No. 14-3.) It concluded that the trial court's colloquy, which included references to the plea questionnaire and waiver of rights form, satisfied Wis. Stat. § 971.08 and *State v. Brown*, 716 N.W.2d 906 (Wis. 2006). (*Id.* at 2–3.) It also noted that, while Love raised the issue of whether his plea was knowing and voluntary, the court had already resolved the question of competency, well before the plea hearing. (*Id.* at 3.) The appellate court explained that Love's evaluating psychologist found he met the criteria for "malingering" and was feigning memory loss and a lack of legal knowledge. (*Id.*) Finally, the court ruled the trial court had not considered any impermissible sentencing factors and gave adequate consideration to the mandatory factors, leaving Love no basis to challenge his sentence. (*Id.* at 3–4.)

In a *pro se* letter, Love then asked the Wisconsin Supreme Court to review his case on August 5, 2021. (ECF No. 14-4 at 1.) The supreme court deemed Love's letter a "timely but nonconforming" petition and allowed Love additional time to file a statement in support of his petition. *See State v. Love*, (docket entry dated Aug. 17, 2021). This deadline was thereafter extended. *Id.* (docket entry dated Sept. 20, 2021). Love ultimately retained private counsel, who timely filed a petition on Love's behalf. (ECF No. 14-4 at 9.) In the petition, Love argued that his case "rais[ed] questions related to plea entry proceedings and ineffective assistance of counsel." (*Id.* at 13.) The petition also questioned whether Love lacked the mental capacity to adequately participate in his plea entry and whether he was prejudiced by the plea hearing proceedings. (*Id.* at 12–13.) The petition specifically stated that "[d]efense counsel has an ethical duty to raise competency whenever it becomes apparent; strategic considerations do not alleviate counsel's duty

to raise competency." (*Id.* at 15 (citing *State v. Johnson*, 395 N.W.2d 176 (Wis. 1986).)  The petition reiterated Love's history of TBI and argued that the extent of Love's TBI and related exacerbated mental health issues "were never brought to the attention of the Circuit Court." (*Id.* at 19.)  On December 15, 2021, the Wisconsin Supreme Court denied Love's petition. (*Id.* at 33.)

## LEGAL STANDARD

To obtain federal habeas relief, Love must show that his state court custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To carry this burden, he must show that the Wisconsin courts rejected his claims "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). But "[w]hen no state court has squarely addressed the merits of a habeas claim," the claim must be reviewed "under the pre-AEDPA standard of 28 U.S.C. § 2243" which "dispose[s] of the matter as law and justice require." *Ramirez v. Tegels*, 963 F.3d 604, 612 (7th Cir. 2020) (quoting *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012)). In other words, the claim is reviewed *de novo*. *Tabb v. Christianson*, 855 F.3d 757, 764–65 (7th Cir. 2017) (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009)).

A federal habeas court reviews "the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citation omitted). In this case, that was the Wisconsin Court of Appeals. Accordingly, to resolve Love's petition, this Court must review that state appellate court's decision for reasonableness, through the deferential lens imposed by the Antiterrorism and Effective Death Penalty Act unless the state court did not squarely address the merits, in which case this Court's review is *de novo*. *See Ramirez*, 963 F.3d at 612.

## ANALYSIS

Love asserts two grounds for relief.  First, he contends that he received ineffective assistance from his trial counsel.  Second, he argues that his no contest plea was not knowingly, intelligently, and voluntarily entered.  Respondent insists both grounds fail.  As for Love's first ground, Respondent insists Love failed to exhaust that ground and it is thus procedurally defaulted.  Respondent also argues that both the first and second ground fail on the merits.  While the Court

does not agree with Respondent's exhaustion and procedural default arguments, the record confirms that Love's claims fail on the merits.

## I. Love's Ineffective Assistance of Counsel Claim Is Not Procedurally Barred, But the Record Confirms Trial Counsel's Performance Was Not Objectively Unreasonable.

Respondent argues that Love's ineffective assistance of counsel claim is procedurally defaulted because he failed to raise it at any level in state court. (ECF No. 34 at 6–17.) The record confirms, however, that Love fairly presented his ineffective assistance claim to the state courts and it is not procedurally defaulted. Love's claim nevertheless fails because the Court cannot conclude that Love received ineffective assistance from his trial counsel.

### A. Love Fairly Presented His Ineffective Assistance of Counsel Claim to the Wisconsin Courts and it Is Not Procedurally Defaulted.

Respondent first contends that Love is barred from presenting his ineffective assistance claim on federal habeas because he failed to present the claim to the Wisconsin Court of Appeals or Supreme Court. (ECF No. 34 at 6–7.) It is well established that a petitioner may only present exhausted claims on federal habeas. To proceed with a claim, the petitioner must have given both the state court of appeals and the supreme court a "meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004) (quoting *Chambers v. McCaughtry*, 264 F.3d 732, 737–38 (7th Cir. 2001)). This exhaustion requirement "reflects a policy of federal-state comity." *Picard v. Connor*, 404 U.S. 270, 275 (1971).

Whether Love fairly presented his claims to the Wisconsin courts depends on four factors:

> (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). No single factor is dispositive. *Sweeney*, 361 F.3d at 332. "The bottom line is . . . assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (quoting *Kurzawa v. Jordan*, 146 F.3d 435, 442 (7th Cir. 1998)). And "a petitioner may reformulate [his]

claims so long as the substance of the claim remains the same." *Sweeney*, 361 F.3d at 333 (citing *McCaughtry*, 264 F.3d at 738).

Applying these factors, the Court concludes that Love fairly raised his ineffective assistance of counsel claim to both the Wisconsin Court of Appeals and Wisconsin Supreme Court. Respondent is correct that Love did not explicitly rely on federal or state cases, but he did not need to. *See Wilson*, 243 F.3d at 327. Broadly construed, Love's annotations to the no-merit brief question his trial counsel's zealous advocacy. (ECF No. 14-2 at 6, 8–10, 13, 29.) This sufficiently "call[s] to mind" the specific constitutional right to effective counsel, given Love's *pro se* status. *See Wilson*, 243 F.3d at 327; *see also Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010) (citing *Johnson v. Hulett*, 574 F.3d 428, 433 (7th Cir. 2009)). Love thus sufficiently presented his claim in the state court of appeals. Love's petition for review to the Wisconsin Supreme Court also raised the ineffective assistance of counsel issue. In fact, the petition squarely hits two of the *Wilson* factors for fair presentment. It relied on state cases applying a constitutional analysis to similar facts and calls to mind *Strickland* through its discussion of whether defense counsel's performance fell below an "objective standard of reasonableness" by failing to raise the competency issue. *See Wilson*, 243 F.3d at 327; (ECF No. 14-4 at 12, 15–17, 21–22.) The issue was therefore fairly presented to the Wisconsin state courts and is properly before this Court now.

Respondent is also incorrect in contending, based on *Page v. Frank*, 343 F.3d 901, 907–09 (7th Cir. 2003), that Love's ineffective assistance claim is procedurally defaulted. (*See* ECF No. 34 at 8–17.) Procedural default precludes a federal court from considering a habeas claim's merits "when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004). A state court's ruling triggers procedural default when it is both independent of federal law ("does not depend on the merits of the petitioner's claim") and adequate ("firmly established and regularly followed as of the time when the procedural default occurred"). *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021); *see also Johnson v. Thurmer*, 624 F.3d 786, 789 (7th Cir. 2010) ("A state procedural ground is independent if it was expressly relied on by the state court in rejecting the claim, and it is adequate if it is a clearly established and consistently followed state practice at the time it is applied.").

Respondent's procedural default argument fails because Love raised this claim before the state courts and they did not rely on any procedural rule in rejecting it. (*See* ECF No. 14-3.) To the contrary, the court of appeals "agree[d] with counsel that there is no arguable merit" to Love's challenge to his no-contest plea because the trial court sufficiently complied with state law. (ECF No. 14-3 at 2.) The court also determined his sentence was not illegal. (*Id.* at 3.) Neither of these rulings are on procedural grounds; they are substantive. And the supreme court denied his petition without opinion. Thus, Love's claim is not procedurally defaulted under an adequate and independent state law, and the Court must reach the merits of Love's ineffective assistance claim. *See Page*, 343 F.3d at 905.

### B. Love's Trial Counsel's Performance Was Not Objectively Unreasonable.

Love argues that he received ineffective assistance of counsel at his plea hearing because his counsel failed to (1) "ensure Mr. Love was entering his plea knowingly, intelligently, and voluntarily;" (2) "inform Mr. Love that he could move to withdraw his plea before sentencing;" and (3) "investigate and raise a renewed concern about Mr. Love's competency after his transport van injury." (ECF No. 33 at 18.) In particular, he contends that trial counsel had "reason to doubt" Love's competence to proceed and thus her performance was objectively unreasonable, and if she had sufficiently investigated Love's competency, this investigation would have "raise[d] serious red flags for any reasonable court" that Love was not competent to proceed, therefore prejudicing him. (*Id.* at 19, 23.)

To establish constitutionally ineffective assistance of counsel, Love must show "that (1) his trial attorney's performance 'fell below an objective standard of reasonableness,' and (2) 'but for counsel's unprofessional errors the result of the proceeding would have been different.'" *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). This burden requires Love to "establish specific acts or omissions of his counsel which constitute ineffective assistance," to which this Court then "determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citing *Menzer v. Untied States*, 200 F.3d 1000, 1003 (7th Cir. 2000)). Review of an attorney's performance is highly deferential, even *de novo*, reflecting "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States*, 648 F.3d 524, 527–28 (7th Cir. 2011) (citing *Strickland*, 466 U.S. at 689); *see also Ramirez*, 963 F.3d at 613.

Love has not met this high bar. He does not identify specific acts or omissions by his counsel that rise to the level of ineffective assistance. As mentioned above, Love claims counsel failed to (1) "ensure Mr. Love was entering his plea knowingly, intelligently, and voluntarily," (2) "inform Mr. Love that he could move to withdraw his plea before sentencing" and (3) "investigate and raise a renewed concern about Mr. Love's competency after his transport van injury." (ECF No. 33 at 18.) But none of these omissions constitute objectively unreasonable performance given the record.

The Court concludes (as discussed below) that Love's plea passed constitutional muster, rendering his first two complaints insufficient to show ineffective assistance. *See United States v. Godwin*, 202 F.3d 969, 973 (7th Cir. 2000) ("There was nothing wrong with the [plea] hearing, and no reason for [counsel] to challenge the hearing or try to change [the] plea."). And "[a] defendant's right to withdraw a guilty plea is not absolute," because "[g]uilty pleas are not to be treated as a strategic maneuver by the parties . . . we presume the verity of the defendant's statements made at a [plea] colloquy." *United States v. Barr*, 960 F.3d 906, 917 (7th Cir. 2020) (quoting *United States v. Rinaldi*, 461 F.3d 922, 926–27 (7th Cir. 2006)). Pleas may be withdrawn for "legal innocence, actual innocence," or if "the plea was not made knowingly and voluntarily." *Id.* (citing *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010)). Again, because the record supports the state court's conclusion that Love's plea was made knowingly and voluntarily, it cannot have been objectively unreasonable performance for his counsel to not inform Love of this option that was unavailable to him.

Nor is Love's third identified concern—counsel's failure to investigate and raise a renewed concern about his competency—ineffective assistance. Counsel has "a duty to ensure that [defendants are] capable of making a rational choice 'among rationally understood probabilities.'" *Galowski v. Berge*, 78 F.3d 1176, 1180 (7th Cir. 1996) (quoting *Stewart v. Peters*, 958 F.2d 1379, 1381 (7th Cir. 1992)). But counsel adequately did so here. The state court engaged a psychologist, who reported her findings and suggested Love was malingering. While Love claims he later aggravated his head injury, his actual competency hearing was held months thereafter. (Case No. 19-cv-1184, ECF No. 52 ¶¶19–21); *State v. Love*, (docket entry dated Jan. 2, 2019). Love's counsel even challenged the court-appointed psychologist's report, stating that she would "have another doctor complete a report." *See State v. Love*, (docket entry dated Oct. 25, 2018). Notwithstanding counsel's efforts, the court found Love competent to proceed following the

competency hearing and after these issues were raised. *See id.* At that point, Love's counsel did not need to initiate further investigation. *See Brown v. Sternes*, 304 F.3d 677, 692 (7th Cir. 2002) ("It is often times a reasonable exercise of professional judgment to limit or terminate further investigation when counsel determines that a particular investigation would be fruitless."). This is not objectively unreasonable conduct, and thus the Court need not reach *Strickland*'s prejudice prong to hold that Love's first ground for relief fails.

II. **The Wisconsin Court of Appeals Did Not Err in Affirming Love's No Contest Plea as Knowing, Intelligent, and Voluntary.**

Love next claims that his no contest plea was not knowing and intelligent because the Wisconsin Court of Appeals unreasonably applied United States Supreme Court precedent. (ECF No. 33 at 26–29.) In particular, Love points to the circuit court's reliance on the written plea questionnaire "to establish that Mr. Love understood the constitutional rights he was waiving" when Love "had demonstrably limited literacy." (*Id.* at 26–27.) Love also criticizes the judge's "fail[ure] to explore" his "mental health struggles," including what medications he was taking, how those medications might impact his understanding. (*Id.* at 27–28.) Love also takes issue with a single compound question, when, during the plea colloquy, the judge asked "Is there anything that would impair your ability to understand what we're doing here now? Do you understand everything?" (*Id.* at 28; ECF No. 14-5 at 4.) Love responded "yes." (ECF No. 14-5 at 4.) Finally, Love contends that the Wisconsin Court of Appeals' failure to address Love's ineffective assistance of counsel claim is an unreasonable application of law, because even a plea colloquy that complies with Rule 11 "cannot be knowing and voluntary if it resulted from ineffective assistance of counsel." (ECF No. 33 at 28–29 (quoting *Hurlow v. United States*, 726 F.3d 958, 967 (7th Cir. 2013).)

The Wisconsin Court of Appeals held that Love's plea was knowing and voluntary for several reasons. First, because "[t]he question of Love's competency was raised prior to the entry of Love's plea." (ECF No. 14-3 at 3.) The court noted that the psychologist's report determined that Love "met the diagnostic criteria for 'malingering,'" "was feigning memory loss . . . and a lack of legal knowledge." (*Id.*) Second, the trial court's plea colloquy—including references to the plea questionnaire and waiver of rights form—sufficiently complied with state law. (*Id.* at 2–3.) As such, Love "did not lack substantial capacity to understand court procedures," and so there was "no non-frivolous basis for Love to challenge this finding." (*Id.* at 3.) While the court of appeals did not cite federal law, it referred to *State v. Brown*, 716 N.W.2d 906 (Wis. 2006), which

itself relies on *Boykin v. Alabama*, 395 U.S. 238 (1969) and *Brady v. United States*, 397 U.S. 742 (1970) to examine "the legal tenets fundamental to guilty pleas" and, in particular, plea colloquies. *Brown*, 716 N.W.2d at 915–16.

The Court agrees with Respondent that Love has not demonstrated that the state court unreasonably applied federal law. There is no Supreme Court or other federal case requiring that the plea colloquy be so detailed as to "eliminate any possibility of epistemological error where a defendant has confirmed his understanding on the record." (ECF No. 34 at 20.) Plea colloquies "expose coercion or mistake," and to reach that end, a trial court "judge must be able to rely on the defendant's sworn testimony at that hearing." *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004) (citing *United States v. Gwiazdzinski*, 141 F.3d 784, 788 (7th Cir. 1998)). The fact that Love was on medication for depression and struggled with a history of head injuries does not render his plea involuntary. *See United States v. Dyer*, 892 F.3d 910, 914 (7th Cir. 2018) ("[D]efendants with mental illnesses can and often do enter knowing and voluntary pleas, so long as the judge can determine that the defendant is able to understand and participate in the proceedings."). The judge asked Love if he understood: (1) what he was charged with, (2) the maximum sentence, (3) that he could be deported if he was not a U.S. citizen, (4) that he would have to register as a sex offender, (5) that he would be waiving certain constitutional rights as contained in the guilty plea questionnaire, (6) that the court was not bound by plea negotiations, (7) that the state would be able to prove these charges against him, and (8) that his plea was no contest. (ECF No. 14-5 at 2–7.) Love answered all questions affirmatively. (*Id.*) Love also stated that nobody made any promises or threats in exchange for his plea, and his counsel stated she was satisfied that Love's plea was intelligently, knowingly, and voluntarily given. (*Id.* at 5–6.) This was sufficient under established law.

Without evidence that Love was "substantially impaired, 'it can't just be assumed' that his mental illness obstructed his ability to understand his pleas." *See Dyer*, 892 F.3d at 914 (quoting *United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012)). The trial court determined that Love was competent to proceed at a hearing whose validity Love has not challenged. And Love and his counsel represented that Love understood the proceedings. Both the Wisconsin Court of Appeals and this Court must be able to rely on those representations, and the Wisconsin Court of Appeals did not unreasonably apply federal law when it did. *See United States v. Chapa*, 602 F.3d

865, 869 (7th Cir. 2010). Love's second ground for relief is therefore without merit, and his petition for writ of habeas corpus must be denied.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Love's petition for a writ of habeas corpus, ECF No. 1 is **DENIED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that, because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE**.

Dated at Milwaukee, Wisconsin on February 8, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge